IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PFLAG, INC., et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>*Defendants*. | Civil Action No. _____ |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS, TO WAIVE REQUIREMENT UNDER LOCAL RULE 102.2(a) TO PROVIDE ADDRESSES IN COMPLAINT CAPTION, AND FOR A PROTECTIVE ORDER**

Plaintiffs George Goe, Bruce Boe, Rachel Roe, and Claire Coe (together, "Parent Plaintiffs") are the parents of minor children with gender dysphoria, Plaintiffs Gabe Goe, Bella Boe, Robert Roe, and Cameron Coe (together, "Minor Plaintiffs"). The Minor Plaintiffs have not been able to receive necessary and essential medical care for their gender dysphoria following President Donald Trump's issuance of two Executive Orders directed at preventing transgender people from expressing a gender identity different from their sex designated at birth. Plaintiffs Dylan Doe and Lawrence Loe are two eighteen-year-old transgender young men (together, "Adult Plaintiffs") who had their medical treatment canceled following the Executive Orders.[1]

The Minor Plaintiffs are entitled to proceed under initials because they are minors pursuant to Federal Rule of Civil Procedure 5.2(a). However, they seek to proceed under pseudonyms to

---

[1] To protect their privacy pending consideration of this motion, in their Complaint and this motion Plaintiffs have used the pseudonyms for which they seek leave to use in this action.

further protect their identities. Their parents seek to proceed under pseudonyms to protect the identity of their children. The identification of the Parent Plaintiffs by their legal names would erase the protection of confidentiality to which the Minor Plaintiffs are entitled because they readily would be identifiable by the names of their parents. Proceeding under pseudonyms also is necessary to protect the Adult Plaintiffs and Minor Plaintiffs (and by extension, the Parent Plaintiffs) from undue harassment, discrimination, and violence because of the Minor and Adult Plaintiffs' transgender status and because the Parent Plaintiffs are affirming parents of transgender adolescents.

To avoid risks of serious mental, emotional, and potentially physical harm, these Plaintiffs respectfully request permission to litigate under pseudonyms for the duration of this case and for a protective order barring disclosure of their real names and other identifiers. To protect their privacy and safety and to avoid exposure to discrimination and harassment, all Individual Plaintiffs, including Plaintiffs B.G. a/k/a W.G. and Kristen Chapman, also request waiver of the requirement under Local Rule 102.2(a) that they provide their addresses in the caption of the Complaint.

Plaintiffs have no objection to providing their legal names to counsel for Defendants and the Court. They also do not intend to prevent the public from having access to the Court's rulings or observing the proceedings of this Court under adequate protection. Plaintiffs want only to prevent public disclosure of their identities.

Because this request is vital for protecting Plaintiffs from harm and it will not impede the public's understanding of the case or burden Defendants in any way, Plaintiffs' request easily satisfies the Fourth Circuit's five-factor balancing test announced in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), and should be granted.

## STATEMENT OF FACTS

### A.   The Executive Orders

On January 28, 2025, President Donald Trump issued an Executive Order directing that federal funding be immediately revoked from entities that provide gender-affirming care for patients younger than nineteen years old (the "Denial of Care Order").[2] The Denial of Care Order followed on the heels of an Executive Order that President Trump issued on January 20, 2025, declaring that gender identify is a "false" idea and commanding that federal funds "shall not be used to promote gender ideology" (the "Gender Identity Order").[3]

The Executive Orders impose significant barriers to health care for transgender people. Since President Trump issued the Denial of Care and Gender Identity Orders, hospitals across the country have abruptly halted medical care for transgender people under nineteen, cancelling appointments for new and existing patients and turning away some patients who have waited years to receive medically necessary care for gender dysphoria. The Minor and Adult Plaintiffs are among the patients whose appointments have been canceled and who have been denied medically necessary care as a result of the Executive Orders.

### B.   The Plaintiffs

The Goe family lives in Maryland. Compl. ¶ 99. Gabe Goe, a minor, is transgender. *Id*. ¶ 100. Gabe came out to his family as transgender when he was twelve years old. *Id.* After careful consideration and in consultation with Gabe's medical team, Gabe's father George and his mother decided to pursue hormone therapy for Gabe. *Id*. ¶¶ 101-02. After the Denial of Care Order was

---

[2] Exec. Order 14,187, *Protecting Children from Chemical and Surgical Mutilation*, 90 Fed. Reg. 8,771 (Jan. 28, 2025), https://www.govinfo.gov/content/pkg/FR-2025-02-03/pdf/2025-02194.pdf.

[3] Exec. Order 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8,615 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-30/pdf/2025-02090.pdf.

issued, Gabe learned he would not be able to start his hormone therapy as planned. *Id.* ¶ 103. The Goe family requests that the Court allow them to proceed under pseudonyms and waive the requirement under Local Rule 102.2(a) that they provide their address to protect their privacy and safety.

The Boe family lives New York. Compl. ¶ 105. Bella Boe, a minor, is transgender. *Id.* ¶ 106. She has known since she was a toddler that her gender identity did not match her sex assigned at birth. *Id.* ¶ 107. After careful consideration and in consultation with Bella's medical team, Bella's father Bruce decided to start Bella on a puberty blocking implant as medically necessary treatment for her gender dysphoria. *Id.* ¶ 109. On January 29, 2025, after first being canceled and then rescheduled, the Boe family was told that her medical provider was shutting down all appointments related to gender-affirming care. *Id.* ¶ 110. Bella is terrified at the possibility of not being able to access the care that has greatly improved her life. *Id.* ¶ 111. The Boe family requests that the Court allow them to proceed under pseudonyms and waive the requirement under Local Rule 102.2(a) that they provide their address to protect their privacy and safety.

The Coe family lives in New York. Compl. ¶ 113. Cameron Coe, a minor, is non-binary. *Id.* ¶ 114. Cameron began expressing their gender identity as early as the age of four, and began identifying as non-binary in the fourth grade. *Id.* ¶ 115. After careful consideration and in consultation with Cameron's medical team, Cameron's mother Claire and their father decided to start Cameron on a puberty-blocking implant as medically necessary treatment for their gender dysphoria. *Id.* ¶ 118. Cameron was scheduled to receive a longer-acting puberty-blocking implant two days after the Denial of Care Order was issued. *Id.* ¶ 120. However, after the Denial of Care Order was issued, Cameron's medical provider canceled their appointment. *Id.* Cameron has been

extremely anxious as a result. *Id.* ¶ 121. The Coe family requests that the Court allow them to proceed under pseudonyms and waive the requirement under Local Rule 102.2(a) that they provide their address to protect their privacy and safety.

The Roe family lives in Massachusetts. Compl. ¶ 122. Robert Roe, a minor, is transgender. *Id.* ¶ 123. Robert began expressing his gender identity as early as two years old. *Id.* ¶ 124. After careful consideration and in consultation with Robert's medical team, the Roe family decided to start Robert on a puberty blocking implant and hormone therapy as medically necessary treatment for his gender dysphoria. *Id.* ¶¶ 125-26. After the Denial of Care Order was issued, Robert's medical provider cancelled Robert's appointment for a regular check-up related to his hormone therapy. *Id.* ¶¶ 127-28. The Roe family requests that the Court allow them to proceed under pseudonyms and waive the requirement under Local Rule 102.2(a) that they provide their address to protect their privacy and safety.

Plaintiff Lawrence Loe is an 18-year-old young man living in New York. Compl. ¶ 145. He was diagnosed with gender dysphoria during puberty. *Id.* ¶ 147. Lawrence began hormone therapy in August of 2023 when he was 16. *Id.* ¶ 148. This treatment has improved his mental health considerably. *Id.* ¶ 149. After careful consideration and in consultation with his mental health professionals and doctors, Lawrence was scheduled to obtain chest masculinization surgery, which he had been looking forward to for six years. *Id.* ¶ 150. Lawrence's medical provider canceled the surgery following the Executive Orders. *Id.* ¶ 151. Lawrence is devastated at not being able to obtain his surgery. *Id.* ¶ 152. Lawrence requests that the Court allows him to proceed under a pseudonym and waive the requirement under Local Rule 102.2(a) that he provide his address to protect his privacy and safety.

Plaintiff Dylan Doe is an 18-year-old young man living in Massachusetts. Compl. ¶ 153. Dylan is transgender. *Id.* ¶ 155. He was diagnosed with gender dysphoria at age 12 and began puberty blockers the next year. *Id.* ¶ 156. He has been on hormone therapy since he was 14. *Id.* Dylan's family moved from Tennessee to Massachusetts in 2021 because the anti-transgender laws in Tennessee created a hostile environment. *Id.* ¶ 157. Dylan had a regularly scheduled appointment with his medical provider to receive his hormone treatment set for January 31, 2025. *Id.* ¶ 160. After the Denial of Care Order was issued, Dylan received a call from his provider on January 30, 2025, canceling his appointment. *Id.* ¶ 161. Dylan requests that the Court allows him to proceed under a pseudonym and waive the requirement under Local Rule 102.2(a) that he provide his address to protect his privacy and safety.

Plaintiff W.G. is a 17-year-old girl living in Virginia with her mother. Compl. 131 W.G. is transgender. *Id.* ¶ 132. She has been diagnosed with gender dysphoria. *Id.* ¶ 136. She began puberty blockers as treatment for gender dysphoria when she was thirteen years old. *Id.* ¶ 136, In 2023, W.G., her mom (Plaintiff Kristen Chapman), and sister moved from Tennessee to Virginia to ensure W.G.'s safety and access to necessary medical care. *Id.* ¶ 138. W.G. was scheduled for an appointment to receive hormones from Children's Hospital of Richmond on January 29, 2025. *Id.* ¶ 141. However, as a result of the Denial of Care Order, W.G.'s appointment was canceled mere hours before it was supposed to take place. *Id.* ¶ 142. W.G. and her mother request that the Court waive the requirement under Local Rule 102.2(a) that they provide their address to protect their privacy and safety.

## ARGUMENT

The Fourth Circuit has held that a trial court has discretion to allow a plaintiff to proceed by pseudonym when the plaintiff's privacy interests outweigh the benefit of keeping the proceeding open and the defendant will not be prejudiced. *James*, 6 F.3d at 238. Many courts

have held that "an individual's transgender identity can carry enough of a social stigma to overcome the presumption in favor of disclosure." *Doe v. City of Detroit*, No. 18 Civ. 11295, 2018 WL 3434345, at *2 (E.D. Mich. July 17, 2018) (collecting cases). For that reason, courts in this Circuit have allowed transgender plaintiffs to proceed under pseudonym, especially where, as here, they are seeking prospective relief against government defendants. *See, e.g., Hersom v. Crouch*, 21 Civ. 450, 2022 WL 908503, at *2 (S.D. W.Va. Mar. 28, 2022). The five-factor balancing test set forth in *James* strongly supports allowing Plaintiffs to proceed under pseudonyms in this litigation.

I.   **THE *JAMES* FACTORS WEIGH STRONGLY IN FAVOR OF PSEUDONYMITY.**

The Fourth Circuit has directed trial courts in this district to balance several factors in assessing a party's request to proceed under a pseudonym must balance several factors. Those factors include:

> [1] Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties; [3] the ages of the person whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James*, 6 F.3d at 238 (numerals added).

Not all the *James* factors may be relevant to a given case, and there may be other factors that are relevant. *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016) (citing *James*, 6 F.3d at 238). "At bottom . . . the trial court must 'carefully review *all* the circumstances of the case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Id*. at 39-40 (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)) (emphasis in original).

### A. Disclosure of Plaintiffs' Identifying Information Would Reveal Matters of Sensitive and Highly Personal Nature.

Courts routinely recognize that "a person's transgender status is a highly sensitive and private matter." *Hersom*, 2022 WL 908503, at *2 (applying *James*); *see also Kadel v. Folwell*, 620 F. Supp. 3d 339, 391 (M.D.N.C. 2022) (finding the plaintiffs' privacy interest outweighs the public's limited interest in learning the private medical details of the plaintiffs' experiences with gender dysphoria); *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 339 (E.D. Pa. 2021) (courts "have allowed anonymity due to the private and intimate nature of being transgender"); *Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) ("[T]he disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s transgender status and his diagnosed medical condition—gender dysphoria.").

This case concerns not only Plaintiffs' transgender *status*, which "is natural" and not a "psychiatric condition," *Kadel v. N. Carolina State Health Care Plan for Tchrs. & State Emps.*, 12 F.4th 422, 427 (4th Cir. 2021), but also their need for safe and effective medical treatment that has become highly politicized. The disclosure of sensitive medical information heightens the need for pseudonymity. *See, e.g., Doe v. Chesapeake Med. Sols., LLC*, No. 19 Civ. 2670, 2020 WL 13612472, at *1 (D. Md. Feb. 26, 2020) (finding the first favor weighed in favor of allowing the use of a pseudonym where the plaintiff's claims involved "information about the plaintiff's medical conditions"); *see also Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (Transgender people "are among those who possess a constitutional right to maintain medical confidentiality.").

Treatment for gender dysphoria is designed to reduce stress and discomfort by facilitating a patient's social, legal, and medical transition. *See Kadel*, 12 F.4th at 427. The Minor and Adult Plaintiffs discuss in detail their medical treatment in the Complaint. Given the highly detailed

(albeit nonidentifying) information in the Complaint about the Minor and Adult Plaintiffs and their medical histories, the use of pseudonyms is essential to protect their privacy.

The first *James* factor strongly supports pseudonymity.

**B.    Disclosure of Plaintiffs' Identifying Information Would Expose Them to Physical or Mental Harm.**

Ample evidence exists that "transgender individuals often face verbal and physical harassment when forced to reveal their transgender status." *Hersom*, 2022 WL 908503, at *2; *see also Arroyo González v. Rosselló Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) (concluding that forced disclosure of a transgender person's status "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger"). As the Fourth Circuit recently recognized, "transgender people have historically been subject to discrimination." *Kadel v. Folwell*, 100 F.4th 122, 143 (4th Cir. 2024).

Anti-transgender attitudes show no signs of abating, and the risk of retaliating against Plaintiffs is very real. If anything, animosity towards transgender people is escalating as politicians intentionally inflame prejudices, including in the recent Gender Identity and Denial of Care Orders. Plaintiffs have experienced bullying and have been forced to move states to ensure continued access to medical care as a result of their transgender status. Compl. ¶¶ 108, 138, 157.

It is well documented that over the last few years, "there has been an escalation of organized, political hostility toward the transgender community from people with agendas to restrict access to gender-affirming care for everyone, but particularly for transgender and gender diverse youth."[4] Indeed, in 2022 alone, over 70% of gender-affirming care providers or their institutions received threats specific to delivering gender-affirming care – the subject matter of this

---

[4] Katie O'Connor, *Gender-Affirming Clinics Subject to Onslaught of Threats, Harassment*, Psychiatry Online (Jan.27, 2023), https://psychiatryonline.org/doi/10.1176/appi.pn.2023.03.2.5.

case – including death threats.[5] And most recently, the Trevor Project's 2024 U.S. National Survey on the Mental Health of LGBTQ+ Young People documented that 28% of transgender and nonbinary young people reported that they had been physically threatened or harmed in the past year due to their gender identity.[6]

The Adult Plaintiffs and Minor Plaintiffs seek gender-affirming medical care to relieve their gender dysphoria and live and be recognized by their gender, not their sex assigned at birth. Disclosing their transgender status in this litigation interferes with those goals. As other courts have held, pseudonymity is particularly appropriate where—as here—identification would cause the very injury from which the plaintiff seeks relief. *See*, *e.g.*, *Alger*, 317 F.R.D. at 42 ("If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag."); *see also Doe v. Alaska,* 122 F.3d 1070, 1070 (9th Cir. 1997) ("disclosure [of Plaintiffs' names] will deny them the very relief they seek"); *Roe v. Ingraham,* 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973) ("[I]f plaintiffs are required to reveal their identity prior to the adjudication on the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid.").

The Minor and Adult Plaintiffs face real risks of discrimination, harassment, and violence because of their transgender status. For the Adult Plaintiffs and the Minor Plaintiffs (and by extension Parent Plaintiffs), the ability to maintain the privacy of their transgender status is critical

---

[5] Hughes, L. D., Gamarel, K. E., Restar, A. J., Sequeira, G. M., Dowshen, N., Regan, K., & Kidd, K. M. (2023). Adolescent Providers' Experiences of Harassment Related to Delivering Gender-Affirming Care. *The Journal of Adolescent Health*, 73(4), 672–678. https://doi.org/10.1016/j.jadohealth.2023.06.024.

[6] Nath, R., Matthews, D.D., DeChants, J.P., Hobaica, S., Clark, C.M., Taylor, A.B., Muñoz, G. (2024). 2024 U.S. National Survey on the Mental Health of LGBTQ+ Young People. West Hollywood, California: The Trevor Project; www.thetrevorproject.org/survey-2024.

to their physical and mental health, now and in the future. The second *James* factor strongly supports pseudonymity.

C.     **Pseudonymity Protects the Privacy and Safety Interests of the Minor Plaintiffs.**

Under Federal Rule of Civil Procedure 5.2(a)(3), Minor Plaintiffs Gabe Goe, Bella Boe, Cameron Coe, and Robert Roe already are entitled to proceed with a measure of anonymity through the use initials instead of names; however, additional privacy protections are warranted for the Minor Plaintiffs and their parents.

In our present information age, disclosing the names and identities of George Goe, Bruce Boe, Claire Coe, and Rachel Roe will have the result of disclosing the identities of their transgender adolescent children Gabe Goe, Bella Boe, Cameron Coe, and Robert Roe. Again, the Complaint necessarily pleads highly detailed—albeit nonidentifying—information which, given the relatively small number of transgender youth, could be used to identify Minor Plaintiffs, especially when combined with their parents' legal names. *See Doe v. Porter*, 370 F.3d 558, 558 (6th Cir. 2004); *K.K. v. Comer*, No. 20 Civ. 96, 2020 WL 8459142, at *1–*2 (E.D. Tenn. Sept. 14, 2020); *S.E.S. v. Galena Unified Sch. Dist. No. 499*, No. 18 Civ. 2042, 2018 WL 3389878, at *2 (D. Kan. July 12, 2018) (permitting plaintiffs to proceed anonymously because the parents and child "share common privacy interests based on their inseparable relationship to one another" and "[o]rdering disclosure of the parents' identities would place—in effect—personally identifiable and confidential information about" the child "in the public record").

Further, proceeding under initials alone may be insufficient to protect the identities of the Minor Plaintiffs and their parents given the highly personal or potentially identifying information they must provide to vindicate their rights in this matter. Other courts have not hesitated to allow minor adolescents who are transgender and their parents to proceed under pseudonyms. *See, e.g.*, *Poe v. Drummond*, No. 23 Civ. 177, 2023 WL 4560820, at *5 (N.D. Okla. July 17, 2023) (granting

motion to proceed under pseudonyms to five transgender adolescent plaintiffs and their parents in challenge to ban on gender affirming medical care); *see also Poe v. Labrador*, No. 23 Civ. 269, 2023 WL 8935065, at *19 (D. Idaho Dec. 26, 2023) (noting that plaintiffs, who were transgender adolescents and their parents, were proceeding under pseudonyms in challenge to ban on gender-affirming medical care); *Doe v. Ladapo*, 676 F. Supp. 3d 1205, 1215 (N.D. Fla. 2023) (same).

Because pseudonymity is necessary to preserve the privacy and safety interests of vulnerable transgender children, the third *James* factor supports pseudonymity.

> **D.   Because this Case Raises Uniquely Legal Claims Against State Officials, Pseudonymity Does Not Undermine the Public's Interest in Open Judicial Proceedings.**

Although not explicit in *James*, the Fourth Circuit has subsequently ruled that "the public's interest in open proceedings must inform a district court's pseudonymity calculus." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014).

Allowing Plaintiffs to proceed under pseudonyms does not deny the public its right to attend the proceedings or inspect the court's opinions and orders resolving the underlying constitutional issue. *See Alger*, 317 F.R.D. at 39. The public is still free to examine pleadings, evaluate the behavior of the parties and the judiciary, and follow the resolution of claims presented. Indeed, "the only thing potentially being shielded from the public is plaintiff's name and any court proceedings or opinions that might be necessary to determine standing." *Id.* (quoting *Doe v. Barrow Co.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003).

The public interest in Plaintiffs' identities is further diminished here because of the uniquely legal nature of Plaintiffs' claims. Plaintiffs maintain that the Executive Orders were *ultra vires* and violate their constitutional rights. They do not seek damages. They seek a court order declaring the Executive Orders unconstitutional and unlawful and enjoining enforcement of these discriminatory directives. In such a case, "knowing the Plaintiffs' identities lends little to the

public's ability to follow the proceedings or understand the disposition of the case." *Doe v. City of Apple Valley*, 2020 WL 1061442, at *2 (D. Minn. Mar. 5, 2020); *see also Doe v. El Paso*, 2015 WL 1507840, at *4 (W.D. Tex. April 1, 2015) (distinguishing between legal challenges and individual damages actions where parties' identity might assist discovery). As many courts have held, the public interest pertains to the outcome of the litigation, not the individual participants. *See, e.g., Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (favoring anonymity where, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities"); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (same); *Doe v. Harris*, 2014 WL 4207599, at *2 (W.D. La. Aug. 25, 2014) ("[M]any of the cases allowing plaintiffs to proceed anonymously involve challenges to the constitutional, statutory, or regulatory validity of governmental activity.").

In sum, Plaintiffs' claims turn on strictly legal questions of statutory interpretation and constitutional jurisprudence, not on Plaintiffs' credibility, reliability, special expertise as a witness, or any valuation of harm experienced by a specific Plaintiffs. As a result, Plaintiffs' request does not impede the public's interest in open judicial proceedings.

### E.  Defendants Would Not Be Prejudiced By the Issuance of a Protective Order or By an Order Granting Pseudonymity.

For two reasons, there is no risk of prejudice or unfairness to Defendants if the Court grants Plaintiffs' request for a protective order and allows them to proceed under pseudonyms.

*First*, as federal officials, Defendant President Donald Trump and the other Defendants acting in their official capacities do not suffer the same reputational harm or other disadvantages the private defendants might face if litigating against an anonymous adversary. As other courts have explained, the "government is not vulnerable to similar reputational harm [as a private party], particularly in a case involving a challenge to the constitutional, statutory, or regulatory validity

of government activity." *Doe v. Virginia Polytechnic Inst. & State Univ.*, 19 Civ. 249, 2020 WL 1287960, at *4 (W.D. Va. Mar. 81, 2020) (citing *Int'l Refugee Assistance Project v. Trump*, 17 Civ. 0361, 2017 WL 818255, at *3 (D. Md. Mar. 1, 2017)); *see also S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (describing suits challenging the constitutional validity of government activity as involving "no injury to the Government's 'reputation'"). For that reason, anonymity "is more likely to be appropriate in cases challenging government activity because there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest." *Int'l Refugee Assistance Project*, 2017 WL 8182555, at *3 (quoting *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)). The Minor Plaintiffs, Parent Plaintiffs, and Adult Plaintiffs represent precisely the kind of "minority interest" that risks stigmatization should their identities be revealed.

*Second*, Defendants will not suffer any unfairness or prejudice from Plaintiffs proceeding under pseudonyms because their counsel will be provided with each Plaintiff's identifying information under a protective order. *See, e.g.*, *Doe v. Univ. of Maryland Sys. Corp.*, No. 23 Civ. 1572, 2023 WL 3949737, at *3 (D. Md. June 12, 2023) ("[T]here is no risk of prejudice to Defendants by allowing this action to proceed anonymously, given that Defendants are aware of Plaintiff's identity."); *Doe v. Virginia Polytechnic*, 2020 WL 1287960, at *5 ("there is no risk [of unfairness to defendants] because the defendants are aware of Doe's and Roe's identities."); *Foster*, 2019 WL 329548, at *2. Subject to a protective order, Defendants' counsel will be free to investigate and validate facts related to Plaintiffs. There is no prejudice to Defendants if Plaintiffs' identities are protected from public dissemination.

**II.     THE COURT SHOULD WAIVE LOCAL RULE 102.2(a)'S REQUIREMENT TO PROVIDE ADDRESSES IN THE COMPLAINT CAPTION**

The same reasons that underlie Plaintiffs' request to proceed under pseudonyms apply to Plaintiffs' request for waiver of the requirement in Local Rule 102.2(a) that they provide their addresses in the caption of the Complaint. This includes Plaintiffs W.G. and Kristen Chapman who moved from Tennessee to Virginia, in part, to ensure W.G.'s safety. Disclosure of Plaintiffs' addresses would erase the protection of confidentiality they seek because their identities could readily be determined from their addresses, and they would be exposed to real risks of physical and mental harm that they seek to avoid.

**CONCLUSION**

The public benefits when constitutional rights and liberties are vindicated. Here, the American public benefits from Plaintiffs' willingness to challenge the Executive Orders, which already have caused harm and will continue to cause harm if not enjoined. To require the public dissemination of their identities would inflict gratuitous injury, would undermine the relief they seek, is not in the public interest, and would not prejudice Defendants' reputation or their ability to defendant against Plaintiffs' legal claims.

For these and the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to proceed under pseudonyms and for a protective order limiting disclosure of their identities to counsel for Defendants.

Date:  February 4, 2025

Joshua Block*
Harper Seldin*
Chase Strangio*
Alexandra R. Johnson*
**American Civil Liberties Union
   Foundation**
125 Broad Street, Floor 18
New York, NY 10004
Telephone: (212) 549-2500
Facsimile:  (212) 549-2650
jblock@aclu.org
hseldin@aclu.org
cstrangio@aclu.org
a.johnson@aclu.org

Deborah A. Jeon (Bar No. 06905)
Zoe M. Ginsberg  (Bar No. 30727)
**American Civil Liberties Union
   Foundation of Maryland**
3600 Clipper Mill Road, Suite 200
Baltimore, MD 21211
Telephone: (410) 889-8555
Facsimile:  (410) 366-7838
jeon@aclu-md.org
zginsberg@aclu-md.org

Laura J. Edelstein*
Kai N. Galindo*
**Jenner & Block LLP**
525 Market Street, 29th Floor
San Francisco, CA 94105
Telephone: (628) 267-6800
Facsimile:  (628) 267-6859
LEdelstein@jenner.com
KGalindo@jenner.com

Madeleine V. Findley*
Zachary B. Cohen (Bar No. 20159)
Mary-Claire Spurgin*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

Respectfully submitted,

*/s/ Zachary B. Cohen*

Omar Gonzalez-Pagan*
Jennifer C. Pizer*
**Lambda Legal Defense
   and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: (212) 809-8585
Facsimile:  (855) 535-2236
ogonzalez-pagan@lambdalegal.org
jpizer@lambdalegal.org

Karen L. Loewy*
**Lambda Legal Defense
   and Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006
Telephone: (202) 804-6245
Facsimile:  (855) 535-2236
kloewy@lambdalegal.org

Nora Huppert*
**Lambda Legal Defense
   and Education Fund, Inc.**
65 E. Wacker Place, Suite 2000
Chicago, IL 60601
Telephone: (312) 605-3233
Facsimile:  (855) 535-2236
nhuppert@lambdalegal.org

Catherine E. Stetson*
Danielle Desaulniers Stempel (Bar No. 20501, Renewed 1/31/25)
Kristina Alekseyeva*
Sam H. Zwingli*
**Hogan Lovells US LLP**
555 13th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5491
Facsimile:  (202) 637-5910
cate.stetson@hoganlovells.com
danielle.stempel@hoganlovells.com
kristina.alekseyeva@hoganlovells.com

MFindley@jenner.com
MSpurgin@jenner.com

Jocelyn A. Sitton*
Lillian M. McGuire*
Rebecca M. Diamond*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile:  (312) 527-0484
JSitton@jenner.com
LMcGuire@jenner.com
RDiamond@jenner.com

sam.zwingli@hoganlovells.com

Jackson Skeen**
**Hogan Lovells US LLP**
125 High Street
Suite 2010
Boston, MA 02110
Telephone: (617) 702-7747
Facsimile:  (617) 371-1037
jackson.skeen@hoganlovells.com

*Attorneys for Plaintiffs*

*\*Application for admission or admission pro hac vice forthcoming.*

*\*\* Application for admission pro hac vice forthcoming and admitted only in D.C.  Supervised by principals of the firm admitted in Massachusetts.*